**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE NON-PARTY DOCUMENT AND DEPOSITION SUBPOENAS<br><br>STERNE, KESSLER, GOLDSTEIN & FOX PLLC<br>1100 New York Ave N.W.<br>Washington, DC 20005,<br><br>     Movant. | Case No. _____ |
| BIOVERATIV INC., BIOVERATIV THERAPEUTICS INC. AND BIOVERATIV U.S. LLC,<br><br>     Plaintiffs,<br><br>    v.<br><br>CSL BEHRING LLC, CSL BEHRING GMBH, and CSL BEHRING RECOMBINANT FACILITY AG,<br><br>     Defendants. | District of Delaware<br>Civil Action No. 1:17-cv-914-RGA<br><br>**NON-PARTY STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.'S MOTION TO QUASH DOCUMENT AND DEPOSITION SUBPOENAS** |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ....................................................................................................... 2

        A.      Sterne Kessler served as patent-prosecution counsel for Bioverativ. .....................2

        B.      Sterne Kessler already responded to a subpoena served by CSL Behring in
                connection with an ITC investigation, which involved patents that Sterne
                Kessler prosecuted for Bioverativ..........................................................................2

        C.      Despite receiving documents and a privilege log from Sterne Kessler in
                the 1066 Investigation, CSL Behring insisted on serving Sterne Kessler
                with a substantially duplicative subpoena in the Delaware case. ...........................4

        D.      All the non-privileged, relevant information that CSL Behring seeks from
                Sterne Kessler can be obtained from less-burdensome sources...............................5

III.    ARGUMENT ......................................................................................................... 14

        A.      The burden on Sterne Kessler imposed by the document subpoena
                outweighs its likely benefit because the requested information can be
                obtained from other more-convenient and less-burdensome sources. ...................15

        B.      The burden on Sterne Kessler imposed by the deposition subpoena
                outweighs its likely benefit and it should be quashed...........................................17

                1.      Deposing Sterne Kessler creates a heavy burden. ....................................17

                2.      Deposing Sterne Kessler has little value...................................................19

IV.     CONCLUSION...................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Dobson*,
   No. 1:06CV2, 2006 WL 3390631 (W.D.N.C. Nov. 22, 2006) ...................................................5

*BASF Aktiengesellschaft v. Reilly Indus., Inc.*,
   2004 WL 2429977 (S.D. Ind. Oct. 29, 2004) ..........................................................................19

*Bioverativ Inc., et al. v. CSL Behring LLC, et al.*,
   C.A. No. 1:17-cv-914-RGA (D. Del. July 7, 2017) .........................................................1, 3, 4

*In the Matter of Certain Recombinant Factor IX Prods.*,
   Investigation No. 337-TA-1066 (U.S.I.T.C.) ................................................................ *passim*

*Coleman v. District of Columbia*,
   284 F.R.D. 16 (D.D.C. 2012) ...........................................................................................14, 15

*Eastman Kodak Co. v. Apple Inc.*,
   No. 10-CV-6022, 2012 WL 13042663 (W.D.N.Y. Mar. 27, 2012) ........................................20

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) ......................................................................................20, 21

*Games2U, Inc. v. Game Truck Licensing, LLC*,
   2013 WL 4046655 (D. Ariz. 2013) .......................................................................................21

*McCook Metals L.L.C. v. Alcoa Inc.*,
   192 F.R.D. 242 (N.D. Ill. 2000) ......................................................................................18, 19

*In re Regents of Univ. of Cal.*,
   101 F.3d 1386 (Fed. Cir. 1996) ......................................................................................18, 19

*ResQNet.com, Inc. v. Lansa, Inc.*,
   No. 01 Civ. 3578, 2004 WL 1627170 (S.D.N.Y. July 1, 2004) ............................................16

*Sperry v. Florida*,
   373 U.S. 379 (1963) ..............................................................................................................18

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*,
   276 F.R.D. 376 (D.D.C. 2011) ...........................................................................14, 15, 17, 20

*Sterne Kessler Goldstein & Fox, PLLC v. Edwards Lifesciences Corp.*,
   13-mc-00048, 2013 WL 123033364 (D.D.C. April 16, 2013) ...................................15, 17, 19

*Therasense, Inc., v. Becton, Dickinson and Co.*,
    649 F. 3d 1276 (Fed. Cir. 2011)............................................................................................20


**Statutes**

28 U.S.C. § 1659(a) ..........................................................................................................3

**Other Authorities**

37 C.F.R. § 1.2 ...............................................................................................................16

Fed. R. Civ. P. 26............................................................................................14, 17, 21

Fed. R. Civ. P. 45............................................................................................................14

## I.    INTRODUCTION

The non-party law firm Sterne, Kessler, Goldstein & Fox P.L.L.C. ("Sterne Kessler")

timely moves this Court to quash the Subpoena to Produce Documents, Information, or Objects

or to Permit Inspection of Premises in a Civil Action ("document subpoena") and the Subpoena

to Testify at a Deposition in a Civil Action ("deposition subpoena") served on it by CSL Behring

LLC et al. ("CSL Behring") on March 5, 2019, in the underlying case *Bioverativ Inc., et al. v.*

*CSL Behring LLC, et al.*, C.A. No. 1:17-cv-914-RGA (D. Del. July 7, 2017) ("Delaware case").[1]

These subpoenas are nearly identical to subpoenas CSL Behring previously served on Sterne

Kessler in connection with *In the Matter of Certain Recombinant Factor IX Prods.*, Investigation

No. 337-TA-1066 (U.S.I.T.C.) ("1066 Investigation").[2] In response to the subpoenas served in

the 1066 Investigation, CSL Behring received documents and a privilege log from Sterne Kessler

relating to its prosecution of the patents at issue in both the 1066 Investigation and the Delaware

case. And Sterne Kessler had no objection to those documents and privilege log being deemed

produced in the Delaware case. Yet that was not good enough for CSL Behring. It insisted on

imposing an additional burden on Sterne Kessler by serving substantially duplicative subpoenas

in the Delaware case. These new subpoenas should be quashed.

CSL Behring's subpoenas impose an undue burden on Sterne Kessler and seek

information that can be more easily obtained from multiple other sources. Indeed, Sterne Kessler

has no unique, non-privileged information that cannot be obtained from the publicly available

---

[1] The document subpoena and deposition subpoenas are attached as served in the Delaware case as Exhibit 2.

[2] Sterne Kessler's Responses and Objections to CSL Behring's subpoenas served in the 1066 Investigation is attached as Exhibit 3.

file wrapper of the patents in suit, the parties in the Delaware case, the documents Sterne Kessler already provided in response to the subpoena in the 1066 Investigation, or the inventor of the patents-in-suit who is alleged to have committed inequitable conduct. Thus, the Court should grant Sterne Kessler's motion to quash the document and deposition subpoenas.

## II.     BACKGROUND

### A.     Sterne Kessler served as patent-prosecution counsel for Bioverativ.

Sterne Kessler has counseled Bioverativ, and its previous parent company Biogen, in patent matters since 2009. Declaration of Ji Eun Kim at ¶2 [hereinafter, "Kim Declaration"] (attached as Exhibit 1). Sterne Kessler provided strategic patent counseling to Bioverativ. *Id.* at ¶3. For example, Sterne Kessler evaluated patents and patent applications that Bioverativ was considering acquiring. *Id.* at ¶4. Sterne Kessler's strategic patent counseling also included preparing new patent applications and prosecuting existing patent applications. *Id.* at ¶5.

In particular, Sterne Kessler prosecuted United States Patent No. 9,670,475 (the "'475 patent"); United States Patent No. 9,623,091 (the "'091 patent"); and United States Patent No. 9,629,903 (the "'903 patent") (collectively, the "patents in suit"), and frequently communicated with Bioverativ about prosecution strategy. Kim Declaration at ¶6.

### B.     Sterne Kessler already responded to a subpoena served by CSL Behring in connection with an ITC investigation, which involved patents that Sterne Kessler prosecuted for Bioverativ.

In July 2017, Bioverativ filed complaints against CSL Behring in the United States International Trade Commission (the "ITC") and the United States District Court for the District of Delaware, alleging infringement of the '475 patent, the '091 patent, and the '903 patent. Complaint, 1066 Investigation (attached as Exhibit 4); Complaint, Delaware Case (D.I. 1) (attached as Exhibit 5). On September 11, 2017, the Delaware case was stayed in accordance

with 28 U.S.C. § 1659(a). Delaware Case, D.I. 9. Despite the stay in the Delaware case, the 1066 Investigation continued to move forward.

On September 5, 2017, CSL Behring responded to Bioverativ's Section 337 complaint at the ITC, and included a litany of affirmative defenses. *See* Order Denying CSL Behring's Motion to Compel, 1066 Investigation, Order No. 11 at 1 (attached as Exhibit 6). Although CSL Behring did not specifically plead inequitable conduct as an affirmative defense, its Fifth Affirmative Defense purported to reserve "the right to amend its Response to include other additional defenses that CSL Behring may learn of during the course of this Investigation, including, but not limited to unenforceability." *Id*. During the 1066 Investigation, CSL Behring served a non-party subpoena for documents and deposition testimony on Sterne Kessler. *See* Exhibit 3. Sterne Kessler complied with the subpoena, providing all potentially responsive documents to Bioverativ's litigation counsel. Bioverativ's litigation counsel then reviewed the documents and produced all responsive, non-privileged documents and a privilege log in response to CSL Behring's subpoena. Although Sterne Kessler did not refuse to sit for a deposition with respect to a limited number of topics, CSL Behring never took Sterne Kessler's deposition in the 1066 Investigation. And, on February 18, 2018, the ITC investigation was terminated.

Shortly thereafter, Bioverativ moved in the Delaware case to lift the stay, which was lifted on April 6, 2018. Delaware case, D.I. 13, 16. CSL Behring later answered the complaint in the Delaware case, asserting that it does not infringe the patents in suit and that the patents are invalid. *See* Answer and Counterclaims, Delaware case (attached as Exhibit 7). CSL Behring also asserted that the patents in suit are unenforceable due to inequitable conduct committed by one of the inventors, Robert T. Peters, during prosecution.  *Id*. at 9-18. Specifically, CSL Behring

alleges two theories of inequitable conduct: (i) Peters "withheld material information from the United States Patent and Trademark Office ("USPTO"); and (ii) Peters "made false statements in a declaration filed with the USPTO with deliberate intent to deceive." *Id.* at 9-10. Neither of CSL Behring's inequitable-conduct theories implicate Sterne Kessler. *Id.* at 9-18.

### C. Despite receiving documents and a privilege log from Sterne Kessler in the 1066 Investigation, CSL Behring insisted on serving Sterne Kessler with a substantially duplicative subpoena in the Delaware case.

CSL Behring now seeks additional discovery from non-party Sterne Kessler in the Delaware case. Specifically, on March 5, 2019, CSL Behring served subpoenas on Sterne Kessler seeking both the production of documents and a deposition. Kim Declaration at ¶7; Exhibit 2. The document requests and deposition topics fall within a handful of overly broad and largely privileged categories, in addition to being nearly identical to the discovery requests that Sterne Kessler previously responded to in the 1066 Investigation.

In an effort to streamline the discovery process and avoid further burden on a non-party to the action, counsel for Sterne Kessler conferred via telephone with counsel for CSL Behring, Ms. Kelli J. Powell, on February 28, 2019, to discuss CSL Behring's deposition subpoena and the document subpoena. *See* Email Exchanges Between Kelli J. Powell and Jonathan Tuminaro (attached as Exhibit 8). Counsel for Sterne Kessler explained that documents from Sterne Kessler, and a privilege log, were already produced to CSL Behring in response to CSL Behring's subpoena in the 1066 Investigation at the ITC. *Id.* Additionally, Sterne Kessler did not object to the already-produced documents and privilege log being deemed as produced in the Delaware case. Counsel therefore discussed whether CSL Behring would agree not to serve Sterne Kessler with another subpoena in this case. *Id.* But CSL Behring refused on March 1, 2019. Instead, on March 5, 2019, CSL Behring served Sterne Kessler with additional subpoenas for documents and deposition testimony, which are substantially duplicative of the requests

contained in CSL Behring's subpoenas served on Sterne Kessler in the 1066 Investigation. Consequently, Sterne Kessler timely served CSL Behring with its Responses and Objections to the document and deposition subpoenas in the Delaware case on March 18, 2019. (attached as Exhibit 9). And now Sterne Kessler timely moves to quash those subpoenas.[3]

> **D.     All the non-privileged, relevant information that CSL Behring seeks from Sterne Kessler can be obtained from less-burdensome sources.**

As summarized in the table below, the document and deposition topics propounded by CSL Behring impinge on the attorney-client privilege. The table also provides non-privileged and less-burdensome sources of information that are available to CSL Behring. CSL Behring already received non-privileged documents and a privilege log in response to nearly all of its requests in the subpoenas served in the 1066 Investigation. *See* Exhibit 3. Thus, only the topics that seek new information are specifically addressed in the table below. Any modifications and/or additions to the discovery requests in the 1066 Investigation are highlighted in yellow. Additionally, Sterne Kessler's detailed responses and objections to all of CSL Behring's requests are contained in its Objections and Responses served in the Delaware case. *See* Exhibit 8.

| No. | Topic | Other Source(s) or Privilege/Relevancy |
|---|---|---|
| RFP 4 | All English-language translations of any non-English-language patent, patent applications, non-patent | **Other Sources:** (1) Patent Office's publicly available file wrapper; (2) Documents produced in response to the 1066 Investigation; |

---

[3] Sterne Kessler's motion to quash is timely because the date of filing is within the 14 days of CSL Behring serving the subpoenas, and CSL Behring has not objected to Sterne Kessler's compliance date of March 19, 2019. *See* Exhibit 8; *See e.g., Anderson v. Dobson*, No. 1:06CV2, 2006 WL 3390631, at *3 (W.D.N.C. Nov. 22, 2006) (holding that the "usual and customary" objection period for a party to move to quash a subpoena is 14 days).

| No. | Topic | Other Source(s) or Privilege/Relevancy |
|---|---|---|
| | literature or prosecution-related Document relating to the Patents-In-Suit or any Related Applications. | (3) Bioverativ; (4) the inventors.<br><br>**Privilege/Relevancy:** All information in Sterne Kessler's possession, if any, that is not available from these other sources regarding this topic would have been received by a communication protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |
| RFP 16 | All Documents and Things relating to Schulte S., "Half-life extension through albumin fusion technologies," Thrombosis Res. 124 Suppl. 2:S6-S8 (2009), including the citation to Schulte in the Patents-In-Suit, the decision to cite to Schulte in the Patents-In-Suit, and the person(s) who decided to cite to Schulte in the Patents-In-Suit. | **Other Sources:** (1) Documents produced in response to the 1066 Investigation; (2) Bioverativ; (3) the inventors.<br><br>**Privilege/Relevancy:** All information in Sterne Kessler's possession, if any, that is not available from these other sources regarding this topic would have been received by a communication protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |
| RFP 19 | All Documents and Things relating to the slide presentations by Inventor Robert T. Peters dated March 25, 2009, attached hereto at Attachment C, including but not limited to the slide presentation's disclosure to the PTO in connection with the Patents-In-Suit and the Related Applications and the decision whether to disclose the slide presentation to the PTO in connection with the Patents-In-Suit and the Related Applications. | **Other Sources:** (1) Patent Office's publicly available file wrapper; (2) Documents produced in response to the 1066 Investigation; (3) Bioverativ; (4) the inventors.<br><br>**Privilege/Relevancy:** All non-Patent Office correspondence documents, if any, in Sterne Kessler's possession are protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |
| RFP 28 | All Documents relating to the requested *inter partes* review of U.S. Patent No. 9,623,091, *CSL Behring* | **Other Sources:** (1) Patent Office's publicly available file wrapper; (2) PTAB's publicly available documents and filings; (3) |

| No. | Topic | Other Source(s) or Privilege/Relevancy |
|---|---|---|
| | *LLC v. Bioverativ Therapeutics Inc.*, IPR2018-01313 (PTAB July 2, 2018), *CSL Behring LLC v. Bioverativ Therapeutics Inc.*, IPR2018-01345 (PTAB July 6, 2018). | Bioverativ; and (4) the inventors.<br><br>**Privilege/Relevancy:** Sterne Kessler did not enter an appearance in the *inter partes* review proceedings for the '091 patent, and thus has no non-public, non-privileged documents relating to these matters. This topic is not relevant to CSL Behring's claims or defenses. |
| RFP 29 | All Communications between You and any other party, including the Plaintiffs, relating to Defendants, including but not limited to Communications regarding the following: *Bioverativ Inc. v. CSL Behring LLC*, No. 1:17-cv-914 (D. Del. July 7, 2017), *Certain Recombinant Factor IX Products*, Inv. No. 337-TA-1066 (July 7, 2017), *CSL Behring LLC v. Bioverativ Therapeutics Inc.*, IPR2018-01313 (PTAB July 2, 2018), *CSL Behring LLC v. Bioverativ Therapeutics Inc.*, IPR2018-01345 (PTAB July 6, 2018). | **Other Sources:** (1) Patent Office's publicly available file wrapper; (2) PTAB's publicly available documents and filings; (3) Bioverativ; and (4) the inventors.<br><br>**Privilege/Relevancy:** Sterne Kessler did not enter an appearance in the *inter partes* review proceedings for the '091 patent, and thus has no non-public, non-privileged documents relating to these matters. This topic is not relevant to CSL Behring's claims or defenses. |
| RFP 34 | All Documents and Things relating to U.S. Provisional Patent Application Nos. 61/363,064; 61/424,555; 61/430,819; 61/438,572; 61/442,079; and 61/470,951, including without limitation any nonprovisional, continuation, continuation-in-part, divisional, or any other patent or patent application (including rejected, abandoned, provisional, or pending applications) derived in whole or in part from said applications, and all foreign counterpart patents or patent applications (including rejected, abandoned, provisional, or pending applications), including U.S. Pat. Application Nos. 15/820,080; | **Other Sources:** (1) Patent Office's publicly available file wrapper; (2) Documents produced in response to the 1066 Investigation; (3) Bioverativ; (4) the inventors.<br><br>**Privilege/Relevancy:** All non-Patent Office correspondence documents, if any, in Sterne Kessler's possession are protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |

| No. | Topic | Other Source(s) or Privilege/Relevancy |
|---|---|---|
| | 15/890,284; and 15/890,290. | |
| RFP 36 | All Documents and Things relating to any proposed or actual transfer of the Patents-in- Suit or the sale or divestiture of Biogen's hemophilia business and/or Sanofi's acquisition of Bioverativ including, but not limited to, any communications regarding diligence conducted by any third party relating to the Patents-in-Suit or Related Applications as part of evaluating a potential sale or divestiture of Biogen's hemophilia business and/or Sanofi's acquisition of Bioverativ. | **Other Sources:**  (1) Documents produced in response to the 1066 Investigation; (2) Bioverativ; (3) the inventors; (4) Sanofi.<br><br>**Privilege/Relevancy:** All information in Sterne Kessler's possession, if any, regarding this topic would have been received by a communication protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |
| Dep. 1[4] | The subject matter of the Requests for Production of Documents and things to be Produced, Nos. 1-39. | **Other Sources:**  *See* Responses/Objections to RFPs summarized above. Responsive information to this topic can be elicited from: (1) the inventors of the patents in suit; (2) the parties; (3) Patent Office's publicly available file wrapper.<br><br>**Privilege/Relevancy:** All information in Sterne Kessler's possession, if any, regarding this topic would have been received by a communication protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |
| Dep. 2 | The authenticity of all Documents and Things produced pursuant to this subpoena. | **Other Sources:**  (1) Bioverativ; (2) the inventors of the patents in suit. |

---

[4] Although Sterne Kessler did not object to sitting for a deposition with respect to Topic Nos. 1-4 in the 1066 Investigation, a deposition was never conducted in that investigation before it was closed by the ITC. As detailed herein, information responsive to all deposition topics is more readily available from the inventors, including Peters, as well as Bioverativ.

| No. | Topic | Other Source(s) or Privilege/Relevancy |
|---|---|---|
| | | **Privilege/Relevancy:** All non-Patent Office correspondence documents, if any, in Sterne Kessler's possession are protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |
| Dep. 3 | The preparation, filing, and prosecution of the Patents-In-Suit and/or of any Related Applications. | **Other Sources:** (1) Patent Office's publicly available file wrapper; (2) Documents produced in response to the 1066 Investigation; (3) Bioverativ; (4) the inventors.  **Privilege/Relevancy:** All non-Patent Office correspondence documents, if any, in Sterne Kessler's possession are protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |
| Dep. 4 | All Communications relating to the Patents-In-Suit and/or any Related Applications, including Communications relating to the prosecution of the Patents-In-Suit and/or to the prosecution of any Related Applications, between You and any other Person or Entity, including Plaintiffs or the Named Inventors of the Patents-In-Suit or any Related Applications. | **Other Sources:** (1) Patent Office's publicly available file wrapper; (2) Documents produced in response to the 1066 Investigation; (3) Bioverativ; (4) the inventors.  **Privilege/Relevancy:** All non-Patent Office correspondence documents, if any, in Sterne Kessler's possession are protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |
| Dep. 5 | The decision(s) to seek patent protection for the subject matter of the Patents-In-Suit and/or of any Related Applications. | **Other Sources:** (1) Patent Office's publicly available file wrapper; (2) Documents produced in response to the 1066 Investigation; (3) Bioverativ; (4) the inventors.  **Privilege/Relevancy:** All non-Patent Office correspondence documents, if any, in Sterne Kessler's possession are protected by the |

| No. | Topic | Other Source(s) or Privilege/Relevancy |
|---|---|---|
| | | attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |
| Dep. 6 | The conception, research, development, design, structure, function, and operation of any alleged inventions claimed in the Patents-In-Suit or any Related Applications. | **Other Sources:** (1) Patent Office's publicly available file wrapper; (2) Documents produced in response to the 1066 Investigation; (3) Bioverativ; (4) the inventors.<br><br>**Privilege/Relevancy:** All non-Patent Office correspondence documents, if any, in Sterne Kessler's possession are protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |
| Dep. 7 | The first sale, first offer of sale, first public demonstration, and first use of the alleged inventions claimed in the Patents-In-Suit or any Related Applications. | **Other Sources:** (1) Patent Office's publicly available file wrapper; (2) Documents produced in response to the 1066 Investigation; (3) Bioverativ; (4) the inventors.<br><br>**Privilege/Relevancy:** All non-Patent Office correspondence documents, if any, in Sterne Kessler's possession are protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |
| Dep. 8 | The first public description of the alleged inventions claimed in the Patents-In-Suit or any Related Applications. | **Other Sources:** (1) Patent Office's publicly available file wrapper; (2) Documents produced in response to the 1066 Investigation; (3) Bioverativ; (4) the inventors.<br><br>**Privilege/Relevancy:** All non-Patent Office correspondence documents, if any, in Sterne Kessler's possession are protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |

| No. | Topic | Other Source(s) or Privilege/Relevancy |
|---|---|---|
| Dep. 9 | Prior art or potential prior art to the Patents-In-Suit or any Related Applications, including without limitation all searches for prior art or relevant art related the Patents-In-Suit or any Related Applications. | **Other Sources:** (1) Patent Office's publicly available file wrapper; (2) Documents produced in response to the 1066 Investigation; (3) Bioverativ; (4) the inventors. <br><br> **Privilege/Relevancy:** All non-Patent Office correspondence documents, if any, in Sterne Kessler's possession are protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |
| Dep. 10 | The scope, validity, and/or patentability of the claims of the Patents-In-Suit. | **Other Sources:** (1) Patent Office's publicly available file wrapper; (2) Documents produced in response to the 1066 Investigation; (3) Bioverativ; (4) the inventors. <br><br> **Privilege/Relevancy:** All non-Patent Office correspondence documents, if any, in Sterne Kessler's possession are protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |
| Dep. 11 | The requested inter partes review of U.S. Patent No. 9,623,091, *CSL Behring LLC v. Bioverativ Therapeutics Inc.*, IPR2018-01313 (PTAB July 2, 2018), *CSL Behring LLC v. Bioverativ Therapeutics Inc.*, IPR2018-01345 (PTAB July 6, 2018), including the basis for Bioverativ's statements regarding the alleged insufficiency of the petitions and/or validity of the '091 patent. | **Other Sources:** (1) Patent Office's publicly available file wrapper; (2) PTAB's publicly available documents and filings; (3) Bioverativ; (4) the inventors; (5) Counsel for Bioverativ in the IPRs. <br><br> **Privilege/Relevancy:** Sterne Kessler did not enter an appearance in the *inter partes* review proceedings for the '091 patent, and thus has no non-public, non-privileged documents relating to these matters. This topic is not relevant to CSL Behring's claims or defenses. |
| Dep. 12 | All Communications between You and any other party, including | **Other Sources:** (1) Patent Office's publicly available file wrapper; (2) Documents |

| No. | Topic | Other Source(s) or Privilege/Relevancy |
|---|---|---|
|  | Plaintiffs, relating to Defendants, including but not limited to Communications regarding *Bioverativ Inc. v. CSL Behring LLC*, No. 1:17-cv-914 (D. Del. July 7, 2017), *Certain Recombinant Factor IX Products*, Inv. No. 337-TA-1066 (July 7, 2017), *CSL Behring LLC v. Bioverativ Therapeutics Inc.*, IPR2018-01313 (PTAB July 2, 2018), *CSL Behring LLC v. Bioverativ Therapeutics Inc.*, IPR2018-01345 (PTAB July 6, 2018), including but not limited to the alleged infringement of the Patents-In-Suit, and the alleged validity of the Patents-In-Suit. | produced in response to the 1066 Investigation; (3) Bioverativ; (4) the inventors.<br><br>**Privilege/Relevancy:** All non-Patent Office correspondence documents, if any, in Sterne Kessler's possession are protected by the attorney-client privilege. Sterne Kessler has already provided documents and things responsive this Request in its response to CSL Behring's subpoenas in the 1066 Investigation, which are available to CSL Behring in the Delaware case. Sterne Kessler did not enter an appearance in the *inter partes* review proceedings for the '091 patent, and thus has no non-public, non-privileged documents relating to these matters. This topic is not relevant to CSL Behring's claims or defenses. |
| Dep. 13 | The acquisition of Syntonix Pharmaceuticals, Inc. by Biogen Inc., including any due diligence on Syntonix Pharmaceuticals, Inc. | **Other Sources:**  (1) Bioverativ; (2) Syntonix Pharmaceuticals, Inc.<br><br>**Privilege/Relevancy:** All non-Patent Office correspondence documents, if any, in Sterne Kessler's possession are protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |
| Dep. 14 | The separation of Bioverativ from Biogen Inc., including any communications with third parties relating to the separation of Bioverativ from Biogen Inc., the Patents-in-Suit or Related Applications. | **Other Sources:**  (1) Bioverativ; (2) Syntonix Pharmaceuticals, Inc.<br><br>**Privilege/Relevancy:** All non-Patent Office correspondence documents, if any, in Sterne Kessler's possession are protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |
| Dep. 15 | The acquisition of Bioverativ by | **Other Sources:**  (1) Documents produced in |

| No. | Topic | Other Source(s) or Privilege/Relevancy |
|---|---|---|
| | Sanofi, including any due diligence relating to the acquisition of Bioverativ by Sanofi. | response to the 1066 Investigation; (2) Bioverativ; (3) the inventors; (4) Sanofi.<br><br>**Privilege/Relevancy:** All information in Sterne Kessler's possession, if any, regarding this topic would have been received by a communication protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |
| Dep. 16 | Any Bioverativ or Biogen patents or patent applications claiming or purporting to claim any FIX Fusion Protein. | **Other Sources:** (1) Patent Office's publicly available file wrapper; (2) Documents produced in response to the 1066 Investigation; (3) Bioverativ; (4) the inventors.<br><br>**Privilege/Relevancy:** All non-Patent Office correspondence documents, if any, in Sterne Kessler's possession are protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |
| Dep. 17 | Any Bioverativ or Biogen patents or patent applications claiming or purporting to claim any method of administering any FIX Fusion Protein. | **Other Sources:** (1) Patent Office's publicly available file wrapper; (2) Documents produced in response to the 1066 Investigation; (3) Bioverativ; (4) the inventors.<br><br>**Privilege/Relevancy:** All non-Patent Office correspondence documents, if any, in Sterne Kessler's possession are protected by the attorney-client privilege. Sterne Kessler's mental impressions regarding this topic are not relevant to CSL Behring's claims or defenses. |

As further explained in Section III, the document subpoena and deposition subpoena should be quashed because any additional responsive, non-privileged documents can be obtained from other sources, and the burden of a deposition heavily outweighs its likely benefit. Moreover, the information CSL Behring seeks in the subpoenas can be obtained from other more-convenient and less-burdensome sources.

## III.    ARGUMENT

Parties may obtain discovery regarding any non-privileged matter that is relevant to a party's claim or defense. Fed. R. Civ. P. 26(b)(1). But courts must limit discovery when the discovery can be obtained from "some other source that is more convenient, less burdensome, or less expensive," or when the discovery's burden or expense outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C)(i), (iii). Courts may also limit discovery "for good cause" and "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "forbidding the discovery." Fed. R. Civ. P. 26(c)(1).

Motions to quash are governed by Rule 45 of the Federal Rules of Civil Procedure. Under this rule, an "issuing court must quash or modify a subpoena" if it would "subject a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv).

Deposing an opposing party's attorney is disfavored. *Coleman v. District of Columbia*, 284 F.R.D. 16, 18 (D.D.C. 2012); *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380-82 (D.D.C. 2011) ("*Sterne Kessler I*"). In *Sterne Kessler I*, this Court concluded that deposing non-litigation, reexamination patent counsel was inappropriate and granted the petitioner's motion to quash. *Sterne Kessler I*, 276 F.R.D. at 385. There the Court identified several factors weighing against deposing opposing counsel: deposing opposing counsel chills attorney-client communications; allows for harassment; decreases the quality of the legal representation; may lead to the disqualification of counsel who may be called as

witnesses; and generates collateral litigation on issues of privilege, scope, and relevancy. *Sterne Kessler I*, 276 F.R.D. at 380-82. Considering these factors, the discovery rules are substantially less permissive than normal when a party seeks to depose an opposing party's attorney. *Coleman*, 284 F.R.D. at 18 (citing *Sterne Kessler I*, 276 F.R.D. at 380-82). Indeed, there is a presumption that deposing opposing counsel creates an inappropriate burden or hardship. *Id.*

Although the subpoena at issue in *Sterne Kessler I* related to third-party patent *reexamination* counsel, this Court found that the same rationale applied to subpoenas of patent *prosecution* counsel. *Sterne Kessler Goldstein & Fox, PLLC v. Edwards Lifesciences Corp.*, 13-mc-00048, 2013 WL 123033364, at *2 (D.D.C. April 16, 2013) ("*Sterne Kessler II*") (quashing a subpoena of patent-prosecution counsel because the burden outweighed any potential benefit).

As explained below, CSL Behring's document and deposition subpoenas should be quashed because the burden imposed by these subpoenas heavily outweighs the likely benefit and the information CSL Behring seeks can be obtained from other more-convenient and less-burdensome sources.

**A.      The burden on Sterne Kessler imposed by the document subpoena outweighs its likely benefit because the requested information can be obtained from other more-convenient and less-burdensome sources.**

Documents from Sterne Kessler, and a privilege log, were already produced to CSL Behring in response to CSL Behring's document subpoena in the 1066 Investigation. The 1066 Investigation involved the same parties, the same patents, and substantially the same issues as the Delaware case. Following the termination of the 1066 Investigation, the parties agreed that the documents produced in response to the 1066 Investigation Subpoena would be deemed produced in the Delaware case. Because the requests in CSL Behring's subpoenas here are nearly identical to the 1066 Investigation subpoenas, CSL Behring already has responsive, non-privileged documents and a privilege log from Sterne Kessler.

For the few document requests that are new or slightly modified (i.e., RFPs 4, 16, 19, 28, 29, 34, and 36), CSL Behring can obtain the requested information from other sources that are more convenient and less burdensome, including publicly available sources, the parties to the Delaware case, and the inventors of the patents, as shown in the table in Section II.D above. Thus, CSL Behring can readily obtain the requested new information without burdening non-party Sterne Kessler.

Indeed, the vast majority of the nonprivileged information that is relevant to the patents in suit and CSL Behring document requests can be obtained from the publicly available file wrapper. Under the Patent Office's rules, all business with the Patent Office must be conducted in writing. 37 C.F.R. § 1.2. This requirement is significant because everything relevant to patentability of the patents in suit must be and is in their respective file histories. *See id.* ("The action of the Patent and Trademark Office will be based ***exclusively*** on the written record in the Office." (emphasis added)). As the court in *ResQNet.com, Inc. v. Lansa, Inc.* observed: "The prosecution histories speak for themselves, and the relevant inquiry in terms of prior art and claim construction is how one of ordinary skill in the art would interpret and understand those prosecution histories." *ResQNet.com, Inc. v. Lansa, Inc.*, No. 01 Civ. 3578, 2004 WL 1627170, at 5 (S.D.N.Y. July 1, 2004). Even assuming that this written record was insufficient, CSL Behring can still depose Bioverativ, the inventors, or the patent examiner regarding the patents in suit.

In particular, the inventors of the patents in suit themselves can address the topics on which CSL Behring seeks information from Sterne Kessler. Even if Sterne Kessler had any nonprivileged information in its possession that is relevant to those topics, this information would be duplicative of any testimony the inventors and other parties can provide, and thus the

Court should quash these subpoenas just like it did in *Sterne Kessler I*. *See Sterne Kessler I*, 276 F.R.D. at 385 (quashing subpoena where defendant had "already deposed the inventor of the patent, who can speak directly on that topic"). In sum, any nonprivileged information CSL Behring may contend it needs concerning the patents in suit is already available in the publicly available file wrapper, through non-attorney witnesses, or was already produced in response to the document subpoena in the 1066 Investigation.

Thus, CSL Behring's document subpoena should be quashed because the requested information CSL Behring seeks can be obtained from other more-convenient and less-burdensome sources. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

**B.    The burden on Sterne Kessler imposed by the deposition subpoena outweighs its likely benefit and it should be quashed.**

**1.    Deposing Sterne Kessler creates a heavy burden.**

Sterne Kessler provided legal advice to Bioverativ in patent matters that involve strategic patent counseling, including patent preparation and prosecution. *See* Kim Declaration at ¶¶3-5. And Sterne Kessler specifically represented Bioverativ by prosecuting the '475, '091, and '903 patents. *Id.* at ¶6. Therefore, many of the factors this Court articulated in *Sterne Kessler I* and *Sterne Kessler II* that weighed against deposing opposing patent counsel are equally applicable here.

First, Sterne Kessler would be burdened unnecessarily because all of the requested information in the deposition topics is more readily available from other sources, including the parties to the Delaware case and the inventors of the patents in suit. Thus, the deposition subpoena should be quashed because the information CSL Behring seeks can be obtained from other more-convenient and less-burdensome sources. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

Second, the time needed to prepare for this deposition will impair Sterne Kessler's representation of other clients. Preparing for this deposition with such broad topics will be time intensive and divert resources away from these matters and to the deposition.

Third, and importantly, deposing Sterne Kessler will necessarily touch on information protected by the attorney-client privilege, likely creating ancillary litigation. Preparing and prosecuting patent applications is the practice of law. *Sperry v. Florida*, 373 U.S. 379, 383 (1963). And the attorney-client privilege applies to an attorney's communications relating to drafting and prosecuting patent applications: "Consultation with counsel during patent prosecution meets the criteria of compliance with law and meeting legal requirements, thereby reducing or avoiding litigation, and is within the scope of subject matter that is subject to the attorney-client privilege." *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1391 (Fed. Cir. 1996). The attorney-client privilege has been applied to attorney-client communications at different patent-prosecution stages. For example, regarding attorney-client communications at the initial prosecution stages, one Illinois federal district court held that the attorney-client privilege protected early drafts of the specification, claims, and other application parts. *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 252-53 (N.D. Ill. 2000).

Here, Sterne Kessler counseled Bioverativ in patent matters that involve strategic patent counseling, including patent preparation and prosecution. Kim Declaration at ¶¶3-5. And Sterne Kessler specifically represented Bioverativ by prosecuting all three of the patents in suit. *Id*. at ¶6. During the prosecution of the patents in suit, Sterne Kessler often communicated with Bioverativ about prosecution strategy. Thus, any communication between Sterne Kessler and Bioverativ about the patents in suit or about draft Patent Office communications—for example, communications about draft claim amendments, specification amendments, and remarks—are

protected by the attorney-client privilege. *See, e.g., McCook Metals*, 192 F.R.D. at 252-53

(protecting initial patent application drafts); *BASF Aktiengesellschaft v. Reilly Indus., Inc.*, 2004

WL 2429977 at *2 (S.D. Ind. Oct. 29, 2004) (protecting a letter about an examiner interview and

a draft reply to an Office Action). Therefore, aside from the items in the file wrapper of the

patents in suit, nearly everything known by Sterne Kessler is protected by the attorney-client

privilege.

As this Court has articulated before, communications to patent-prosecution counsel are

subject to attorney-client privilege, thus Sterne Kessler's motion to quash CSL Behring's overly

broad and duplicative deposition subpoena should be granted. *See Sterne Kessler II*, 2013 WL

12303364, at *4 (granting a motion to quash under similar facts, commenting on attorney-client

privilege that "Sterne Kessler necessarily recognizes that this information is not of its very nature

privileged, but rather that Sterne Kessler is privileged to refrain from being the source of this

information.").

### 2.     Deposing Sterne Kessler has little value.

Deposing Sterne Kessler will result in little, if any, non-privileged and relevant

information about the patents in suit. Again, communications with the client are protected by

attorney-client privilege. *See, e.g., In re Regents of University of Cal.*, 101 F.3d at 1391; *BASF*,

2004 WL 2004 WL 2429977 at *2; *McCook Metals*, 192 F.R.D. at 252-53. Here, Sterne Kessler

has already provided responsive, non-privileged information, and as explained above, all other

relevant information can be obtained from publicly available sources or more-convenient

sources.

Additionally, Sterne Kessler's knowledge and mental impressions, if any, of the prior art

and other prosecution documents are not relevant to CSL Behring's defenses. Although CSL

Behring has an inequitable-conduct defense, CSL Behring has not implicated any Sterne Kessler

attorney in the inequitable-conduct allegations. *See* Exhibit 7 at at 9-18. Instead, CSL Behring

alleges only that inventor Peters submitted a false declaration and also withheld relevant prior art

during prosecution. *Id*. Because CSL Behring has not implicated any Sterne Kessler attorney in

its inequitable-conduct allegations, Sterne Kessler should not be required to provide testimony

that would be duplicative to the inventors and other parties involved in the Delaware case. *See*

*Eastman Kodak Co. v. Apple Inc.*, No. 10-CV-6022, 2012 WL 13042663 (W.D.N.Y. Mar. 27,

2012).

The *Eastman Kodak* case is instructive. There, the court held that "Kodak's factual

allegations . . . are lacking and accordingly its motion to amend its answer to add an inequitable

conduct defense must be denied." *Id*. at *3. In discussing the heightened pleading standard for

inequitable conduct as announced by the Federal Circuit (*see Therasense, Inc., v. Becton,*

*Dickinson and Co.*, 649 F. 3d 1276, 1289-90 (Fed. Cir. 2011); *see also Exergen Corp. v. Wal-*

*Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009)), the court also approved of this

Court's order quashing a subpoena in *Sterne Kessler I*, commenting that it prevented a "fishing

expedition" by Kodak. *Id*. at *3, n.3 ("The Court notes that Kodak's attempt to depose lawyers

from Sterne, Kessler, Goldstein & Fox about this litigation and the prosecution history was

recently rejected in the District of Columbia because, *inter alia*, it appeared to be a 'fishing

expedition.'")

CSL Behring's discovery tactics here are similar to the defendant's tactics in *Eastman*

*Kodak*. For example, during the 1066 Investigation, in denying CSL Behring's motion to compel

discovery, Administrative Law Judge Lord held that CSL Behring "had not pled a single fact in

satisfaction of the particularity requirement and its catchall defense was merely an effort to keep

open the possibility of alleging additional facts as they become known after conducting

discovery"— a procedure ALJ Lord indicated was improper under *Exergen*. *See* Exhibit 6 at 3-4.

She further noted that courts "favor dismissal of general allegations of inequitable conduct to

prevent parties from engaging in a fishing expedition." *Id* at 4. Here, CSL Behring should not be

permitted to continue its "fishing expedition" by deposing Sterne Kessler on broad topics,

because as noted above, CSL Behring's inequitable-conduct allegations do not implicate any

Sterne Kessler's attorneys as required by the *Exergen* pleading standard.

To the extent CSL Behring seeks facts relating to its inequitable-conduct allegations as

pled, CSL Behring can depose Peters or can obtain publicly available documents from the Patent

Office. Sterne Kessler has no unique, non-privileged information that cannot be obtained from

these other sources. In sum, the deposition of Sterne Kessler will have little, if any, benefit

because the vast majority of information CSL Behring seeks is protected by the attorney-client

privilege, is not relevant to CSL Behring's claims and defenses, or can be obtained from less-

burdensome or more-convenient sources—such as, the individual that CSL Behring alleges

committed inequitable conduct, and/or the patent examiner. *See, e.g., Games2U, Inc. v. Game

Truck Licensing, LLC*, 2013 WL 4046655, *8-*9 (D. Ariz. 2013) (granting motion to quash

deposition subpoena of the prosecuting patent counsel because the "information is readily

available from deposing the patent examiner," which outweighed "the risk of encountering

privilege issues").

Therefore, the deposition subpoena should be quashed because the burden of deposing

Sterne Kessler outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

## IV.    CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court quash the document

subpoena and deposition subpoena of Sterne Kessler.

Dated: March 18, 2019                    Respectfully submitted,


                                          /s/ *Jonathan Tuminaro*

                                         STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
                                         Jonathan Tuminaro (D.C. Bar No. 99051)
                                         1100 New York Avenue, N.W.
                                         Washington, D.C. 20005
                                         (202) 371-2600
                                         jtuminar@sternekessler.com

                                         Counsel for STERNE, KESSLER, GOLDSTEIN
                                         & FOX P.L.L.C.


## CERTIFICATE OF CONFERENCE PURSUANT TO LCvR 7(m)

I hereby certify that Jonathan Tuminaro, an attorney representing Sterne, Kessler, Goldstein & Fox P.L.L.C. in the underlying litigation, conferred with Kelli J. Powell, an attorney representing Defendants, on February 28, 2019, in a good-faith effort to narrow the discovery issues forming the basis for this Motion. Defendants indicated that they would oppose this Motion on March 18, 2019.

                                          /s/ *Jonathan Tuminaro*
                                         Jonathan Tuminaro

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served

on Defendants' counsel by way of ECF, electronic mail at the following address:

Harry Hanson
Kelli J. Powell
Kate Saxton
WilmerHale
60 State Street
Boston, MA 02109
(617) 526-6049
Harry.Hanson@wilmerhale.com
Kelli.Powell@wilmerhale.com
Kate.Saxton@wilmerhale.com

Dated: March 18, 2019                                    /s/ *Jonathan Tuminaro*
                                                        Jonathan Tuminaro